**Debra DANTZ, Plaintiff,**

v.

**APPLE OHIO LLC, et al., Defendants.**

No. 5:03 CV 0329.

United States District Court, N.D. Ohio, Eastern Division.

July 21, 2003.

Christy B. Bishop, Thompson Law Office, Dennis R. Thompson, Thompson Law Offices, Akron, OH, for Debra Dantz.

Scott M. Loomis, Calfee, Halter & Griswold, Todd F. Palmer, Calfee, Halter & Griswold, Cleveland, OH, for Apple American Group LLC.

Michael Sanders, Akron, OH, pro se.

## MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

Before the Court is the motion of defendant Apple American Group LLC ("the Company")[1] for an order staying the instant case pending arbitration of the claims set forth in the complaint filed on January 22, 2003 in the Summit County Court of Common Pleas and removed by defendant on February 21, 2003, on the strength of Count I, a claim made under the Federal Fair Labor Standards Act. Plaintiff Debra Dantz ("Dantz") filed a response to the motion (Doc. No. 20) and defendant filed a reply (Doc. No. 27).

---

1. The Company states in its motion that it was incorrectly identified in the complaint as "Apple Ohio LLC."

For the reasons and to the extent set forth below, the motion (Doc. No. 16), construed with respect to the Company as a motion to compel arbitration, is granted. As discussed below, the Court will remand Counts IV and VI, to the extent they are claims against an individual, defendant Michael Sanders. Further, the Court will dismiss all counts to the extent they are claims against the Company.

## I. BACKGROUND

The complaint filed by Dantz against the Company and Michael Sanders, a manager employed by the Company, alleges that Dantz was hired in July 2000 as a server at the Chapel Hill Applebee's Restaurant, a franchisee of the Company. Her supervisor was Sanders. The eight-count complaint alleges violations of the federal Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act, as well as claims of unjust enrichment, sexual harassment, negligent retention, retaliation, promissory estoppel, breach of contract, and spoliation of evidence. The retaliation claim is brought only under Ohio Rev.Code §§ 4112.02(I) and 4112.99. The sexual harassment claim is not linked to any particular statute. Presumably, if it is not brought under the Ohio Revised Code, it is meant to be a common law claim of sexual harassment. What is perfectly clear from the complaint is that there are no Title VII claims here.

The Company asserts that the employment relationship between it and plaintiff is governed by an agreement known as the "Apple American Group LLC Dispute Resolution Program" (the "Program") which contains a broad, mandatory dispute resolution process culminating in binding arbitration. The Program was adopted by the Company with an effective date of October 1, 2001. Prior to that date, all Company employees, including the plaintiff, received copies of the Program and attended group training sessions relating to the Program.

On the first page, in bold capital letters, the Program booklet stated:

**THIS PROGRAM IS A CONDITION OF YOUR EMPLOYMENT AND IS THE MANDATORY AND EXCLUSIVE MEANS BY WHICH THOSE PROBLEMS MAY BE RESOLVED, SO READ THE INFORMATION IN THIS PROGRAM BOOKLET CAREFULLY.**

(Motion, Exh. A). The Program then outlines a 4–step process for employment dispute resolution including: Communication, Executive Review, Mediation, and Arbitration. When "legal" claims, as defined by the Program,[2] are involved, either party to the dispute may skip directly to the Mediation step.

The Program describes certain rules, including rules as to what claims are subject to arbitration:[3]

Claims and disputes subject to arbitration **include all those legal claims you may now or in the future have against the Company** (and its successors or assigns) or against its officers, directors, shareholders, employees or agents, including claims related to any Company employee benefit program or against its fiduciaries or administrators (in their personal or official capacity), **and all claims that the Company may now or in the future have against you**, whether or not arising out of your employment or termination, except as expressly ex-

---

**2.** "Legal claims" are defined as "statutory or common law" claims. (Motion, Exh. A, at 2).

**3.** It also lists claims that are *not* subject to arbitration, mostly including matters relating to criminal proceedings, unemployment insurance, statutory workers' compensation, and actions to enforce restrictive covenants. (*See* Motion, Exh. A, at 4).

cluded under the "Claims Not Subject to Arbitration" section below.

The legal claims subject to arbitration include, but are not to be limited to:

- claims for wages or other compensation;
- claims for breach of any contract, covenant or warranty (expressed or implied);
- tort claims (including, but not limited to, claims for physical, mental or psychological injury, without regard to whether such injury was sustained in the course and scope of employment);
- claims for wrongful termination;
- sexual harassment;
- discrimination (including, but not limited to, claims based on race, sex, religion, national origin, age, medical condition or disability whether under federal, state or local law);
- claims for benefits or claims for damages or other remedies under any employee benefit program sponsored by the Company (after exhausting administrative remedies under the terms of such plans); and
- claims for a violation of any other non-criminal federal, state or other governmental law, statute, regulation or ordinance.

(Motion, Exh. A, at 4, emphasis added). Further underscoring the mandatory nature of the Program is the following provision:

If either party pursues a legal claim covered by the Dispute Resolution Program in court by any means other than arbitration, the responding party shall be entitled to stay or dismissal of such action, the remand of such action to arbitration, and the recovery of all costs and attorney's fees and expenses related to such action.

(Motion, Exh. A, at 6). Further, although the Company reserved the right to alter parts of the Program, the arbitration provisions were at all times binding on the Company:

The Company retains the right to unilaterally change or delete any provisions of this Program **except for those provisions governing mandatory binding arbitration.**

(Motion, Exh. A. at 6, emphasis added). Finally, although the Program was mandatory, it did not create a contract of employment:

**While this Program constitutes a binding promise between you and the Company to arbitrate all claims in dispute described in the Program Booklet, this Program is not and shall not be construed to create any contract of employment, expressed or implied. Nor does this Program in any way alter the "at will" status of any employment. *This Program will prevent you from filing a lawsuit in Court for individual relief for a legal claim subject to arbitration.***

(Motion, Exh. A, at 7, bold text in original; italics added).

The Company asserts that this Program is enforceable under both the Federal Arbitration Act and the Ohio Arbitration Act. As a result, the Company's motion seeks an order staying all court proceedings and awarding it the costs, expenses and attorney's fees incurred in preparation of the instant motion.

## II. DISCUSSION

### A. Claims against Defendant Michael Sanders

■ A careful review of the complaint filed in state court reveals that only two of the eight counts could arguably be leveled against defendant Sanders in his *individual* capacity. To the extent he may be involved in the remaining six counts, it

would be only as an agent of the Company, with no individual liability.

Dantz does allege that Sanders sexually harassed her (*see, e.g.,* ¶¶ 25, 28, 32 and Count IV) and that he retaliated against her for complaining about his conduct (*see, e.g.,* ¶¶ 17, 34 and Count VI).

Although the remainder of this Memorandum Opinion will discuss the question of whether Dantz's claims against the Company are subject to binding arbitration under an arbitration agreement which she and the Company allegedly agreed to, the claims against Sanders are not implicated by that discussion for the simple reason that any arbitration agreement would have been made between Dantz and the Company, not between Dantz and Sanders.

Although under Title VII there would be no *individual* liability for sexual harassment and/or retaliation, *see Wathen v. General Electric Co.,* 115 F.3d 400 (6th Cir.1997), Dantz's claims are brought only under Ohio law. Therefore, this Court turns to Ohio law to determine whether Sanders can be held *individually* liable for any sexually harassing and/or retaliatory behavior of his own, that is, whether, notwithstanding any agreement with the Company to arbitrate disputes, Dantz is nonetheless permitted to sue Sanders.

In *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 703 N.E.2d 782 (1999), the Ohio Supreme Court answered a question certified to it by the Northern District of Ohio, specifically:

> [M]ay supervisors and managers be held personally liable for unlawful discriminatory acts committed by such persons in violation of R.C. Chapter 4112?

*Id.* at 296, 703 N.E.2d 782 (rephrasing the actual certified question). The Ohio court noted that this question of state law "presupposes employer liability." *Id.* The Court answered the certified question in the affirmative and held:

> For purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with his/her employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112.

*Id.,* Syllabus.

Therefore, this Court now concludes that the claims set forth in Counts IV and VI against Sanders individually are not in any way subject to the arbitration agreement which allegedly exists between Dantz and the Company and which is discussed at length below. These claims, both of which are purely state law claims as pled, will be remanded to the state court from whence they came.

The Court also notes that, to date, Sanders is not represented by counsel. On March 31, 2003, in response to a handwritten letter from Sanders which was docketed as a motion for leave to file an answer, this Court stated:

> The Court plans to conduct the Case Management Conference (CMC) required by the local rules and *requests that Sanders appear personally for that conference* once it is scheduled. [footnote omitted]. Until that time, the Court directs Sanders not to worry about hiring an attorney or filing an answer since, in the Court's preliminary view, it is highly questionable whether Sanders could be *personally* liable for any of the claims set forth in plaintiff's complaint. The Court will explore this issue at the CMC.

> In the meantime, plaintiff's counsel is urged to consider dismissing Sanders as a defendant and should come to the CMC prepared to indicate his views on that course of action; in the alternative, counsel should come to the CMC prepared to explain how any of the causes of action that are pled in the complaint would result in Sanders' *individual* liability.

(Doc. No. 9, emphases in original). At that time, the Court preliminarily expressed the view that Sanders could not be held individually liable for any of the claims advanced in the complaint. Of course, that is true under federal law. However, the Court has now discovered, having researched the issue, that this is *not* true under Ohio law and, in fact, as already noted above, Sanders can be held individually liable for sexual harassment and/or retaliation under Ohio law. Clearly, the Court's preliminary view was simply wrong.

**Given that procedural history, this Court is of the view that, upon remand, it would be advisable for Sanders to obtain representation and to file his answer forthwith with respect to Counts IV and VI. It would be further advisable for Sanders to affirmatively (and immediately) seek leave from the state court for a specific amount of time within which to file his answer. In no event should Sanders, presently unrepresented, ignore this lawsuit.**

**The Court expressly directs the Clerk to issue this order to Sanders himself at the address on the docket. The Court further directs Sanders to take all necessary steps before the Court of Common Pleas of Summit County to assure that his answer will not be foreclosed due to any perceived delay on his part.**

### B. *Claims against the Defendant Company*

In this section, the Court will now address the Company's assertions that Dantz's claims against the Company cannot be litigated but must be arbitrated.

The Federal Arbitration Act ("FAA" or the "Act") provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Act clearly applies to any contract which contains a written arbitration provision and which evidences a transaction "involving" interstate commerce.

As noted by the district court for the Southern District of Ohio:

> Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted · by American courts, and to place arbitration agreements upon the same footing as other contracts."

*Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 853–54 (S.D.Ohio 2003) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).[4]

---

**4.** The *Raasch* court explained that

[w]hile arbitration awards were enforceable, *see, e.g., Brennan v. Brennan*, 164 Ohio St. 29, 128 N.E.2d 89, 94 (1955) (noting that binding arbitration awards were held enforceable in Ohio, except where obtained by fraud or the like, at least as far back as 1835), American courts in general demonstrated hostility toward ordering specific performance of an agreement to arbitrate, seemingly adopting a jealous notion held by the common law courts of England that arbitration agreements were nothing less than a drain on their own authority to settle disputes. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–220 n. 6, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

*Raasch*, 254 F.Supp.2d at 853.

The Supreme Court has interpreted 9 U.S.C. § 2 quite broadly, reading "involving" as the functional equivalent of "affecting commerce" which normally "signals an intent to exercise Congress' commerce power to the full." *Allied–Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 277, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (citing *Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956)); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting the "liberal federal policy favoring arbitration agreements"). The Court has also recognized the applicability of arbitration provisions in the employment context, except for a few narrow exceptions not applicable here, *see Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum"), and has held that, where a party has "made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* "[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.* at 637, 105 S.Ct. 3346. *See also Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir.2000) (it goes without saying that the arbitral forum must "allow for the effective vindication" of a plaintiff's statutory claim).

■ The FAA also provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

The determinative factor of whether an arbitration provision can be enforced to settle a dispute is the existence of a contract between the parties demonstrating that they intended for such to be the case. *See Floss*, 211 F.3d at 314. That determination is made with reference to state-law contract principles. *Id.* (citing *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)); *Orcutt v. Kettering Radiologists, Inc.]*, 199 F.Supp.2d at 750–51. *Raasch*, 254 F.Supp.2d at 854. Thus, this Court must examine whether the Program set forth by the Company constitutes a binding agreement with reference to Ohio contract law. If it is a binding contract, then 9 U.S.C. § 3 requires arbitration instead of this litigation.

The Company asserts in its motion that the Program is a valid, binding and enforceable agreement to arbitrate all of the disputes raised by plaintiff's complaint. Although the Program was placed into effect almost a year after plaintiff began her employment, it is an enforceable agreement, according to the Company, because there was an offer and acceptance (mutual assent) supported by consideration.

The Company asserts that it *offered* plaintiff, an at-will employee, continued employment subject to the terms of the Program. It gave her a copy of the Pro-

gram, conducted a training session, and provided her with a cover memorandum inviting acceptance by way of continued employment.[5] Plaintiff, according to the Company, manifested her assent to the Program by continuing to work at Applebee's, notwithstanding her refusal to sign the acknowledgment form provided to her with the Program booklet.

Plaintiff argues, in turn, that, although she did receive a copy of the Program, she refused to sign it when repeatedly asked by the Company to do so. She asserts that she was not required to quit her job in order to retain her legal rights. She argues that "Apple was put on notice that [she] did not voluntarily agree to forfeit her statutory and common law rights, nor her constitutional right to a jury trial." In her view, by allowing her to continue with her employment in the face of her refusal to sign on to the Program, the Company waived any right to apply the Program to her.[6]

█ Plaintiff's view has no merit. There is no requirement that an arbitration agreement be signed in order to be valid and enforceable. *Brumm v. McDonald & Company Securities, Inc.*, 78 Ohio App.3d 96, 603 N.E.2d 1141 (Ohio App. 4., 1992). What is required to validate the arbitration agreement and make it contractual is an offer and acceptance, supported by consideration. Here, plaintiff, an at-will employee, manifested her assent in the very way that the Company requested, that is, by continuing her employment after October 1, 2001.

Plaintiff's reliance on *Robinson v. Ada S. McKinley Community Services, Inc.*, 19 F.3d 359 (7th Cir.1994), for the proposition that she had no "duty" to quit her job is misplaced. In *Robinson*, the court found that the employer's attempt to unilaterally modify an employment contract was ineffective because there was no additional consideration. Robinson began her employment in 1979 under a 1978 personnel policy manual that provided for "permanent employment status" after a six-month probation period and outlined procedures for termination. In 1986, long after Robinson completed her six-month probationary period, which meant she had already attained tenure, her employer published a new policy manual which purported to give it the right to modify or change policies at any time without notice and which contained a disclaimer that the manual could not be construed as an employment contract. When Robinson was summarily terminated in 1989, she filed a breach of contract complaint. The *Robinson* court determined that the second manual could not modify the first (which it found to be an employment contract), absent additional consideration. It stated:

A valid modification of the original employment contract between Robinson

---

**5.** When the Program was first promulgated it was accompanied by a letter from the Company president dated September 7, 2001. This letter notified employees that the Company had adopted the Program, effective October 1, 2001, and that "[each employee's] agreement to the program provisions, including arbitration, **will be expressed by your continuing your employment with the Company from and after October 1, 2001**, by accepting any promotions, increases, transfers, bonuses or other benefits of employment, **and by the Company's mutual promise to follow the Program's provisions, including those governing** mandatory, binding arbitration." (Motion, Exh. B) (emphases added).

**6.** Plaintiff also argues that the Company waived any right to arbitration by its voluntary acceptance of this Court's jurisdiction through removal. Clearly this is not so; the Company was merely both responding to plaintiff's complaint and exercising its right to federal court jurisdiction. The Court notes that the Company immediately raised the mandatory Program as an affirmative defense.

and McKinley did not occur simply because McKinley unilaterally issued the 1986 Manual containing a disclaimer. Acceptance and consideration cannot be inferred from Robinson's continued work. By continuing to work, Robinson was merely performing her duties under the original contract. According to McKinley's logic, the only way Robinson could preserve her rights under their original employment contract would be to quit working after McKinley unilaterally issued the disclaimer. That is ridiculous.

"There is nothing unlawful about offering a benefit to a promisee in exchange for a modification of the contract; the problematic modifications are those not supported by consideration." *American Hosp. Supply v. Hospital Products Ltd.,* 780 F.2d 589, 599 (7th Cir.1986). **If a valid modification of the employment contract between Robinson and McKinley occurred, then Robinson gave up her legal right to tenure, permanent employment status, and the protections of the 1978 Manual. To find consideration to support this purported modification, there must be some benefit to Robinson, detriment to McKinley, or Robinson's continued work under the 1986 Manual must have been a bargained for exchange. There was no consideration here.** McKinley does not claim that Robinson received any benefit for giving up her protections, and McKinley

did not suffer any detriment. Moreover, there was no bargained for exchange to support Robinson's relinquishment of the protections she was entitled to under the 1978 Manual. Therefore, we find that Robinson's continued work does not constitute consideration for the purported modification.

*Robinson,* 19 F.3d at 364 (emphasis added). Plaintiff relies on the first paragraph quoted above to make her argument; but plaintiff's situation is very different from Robinson's. Robinson already had an enforceable right to permanent employment by the time her employer attempted to unilaterally change her employment contract. *See Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 947 (7th Cir.1994) (noting with approval a refusal to regard continued employment as consideration in a case like *Robinson* where the employee's contract already entitled her to continued employment). Therefore, absent new consideration in the form of a benefit to Robinson or a detriment to her employer, the new "contract" was not enforceable.[7] Plaintiff here was an "at-will" employee. She did not have any contractual right to continued employment. Her situation is much closer to that of the plaintiffs in *Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir.2002) and *Raasch v. NCR Corporation,* 254 F.Supp.2d 847 (S.D.Ohio 2003).

In *Adkins,* a temporary employee of Labor Ready, an agency that provided manual day labor to companies, filed a lawsuit

---

7. Plaintiff's reliance on the unpublished decision in *Hardwick v. Sherwin Williams, Co.,* No. 81575, 2002 WL 31992364 (Ohio App. 8. Feb.13, 2003), is also unavailing. In *Hardwick,* the facts were completely different from the instant case. There, the new agreement imposed upon the employees required them to submit to arbitration, but did not require the employer to do the same. Here, of course, both employees and employer are bound by the mandatory arbitration provisions. In *Hardwick,* there was no demand to show assent by continued employment nor was there even any attempt to make assent a condition of employment. Here, the Program clearly stated that it was "mandatory and exclusive" and "a condition of your employment." The cover letter accompanying the Program when promulgated expressly stated that "agreement to the program provisions, including arbitration, will be expressed by your continuing your employment with the Company from and after October 1, 2001 . . . ."

alleging violations of various labor laws. Labor Ready filed a motion to compel arbitration and to stay proceedings based on an agreement signed by Adkins and every Labor Ready employee. This policy provided:

> I understand that my employment with LABOR READY, INC. is on a day-to-day basis. That is, at the end of the work day, I will be deemed to have quit unless and until I request and receive a work assignment at a later date.
>
> I agree that any disputes arising out of my employment, including any claims of discrimination, harassment or wrongful termination that I believe I have against Labor Ready and all other employment related issues (excluding only claims arising under the National Labor Relations act [sic] or otherwise within the jurisdiction of the National Labor Relations Board) will be resolved by arbitration as my sole remedy. The arbitration shall be conducted by the American Arbitration Association under its Commercial Arbitration Rules and the decision of the arbitrator shall be final and binding. I understand that Labor Ready also agrees to arbitrate in the same manner any claims which the company believes it has against me.
>
> I HAVE READ AND AGREE TO THE ABOVE STATEMENTS.

303 F.3d at 500 (upper case in original). Adkins argued that the above was unenforceable because there was no exchange of consideration to support the formation of a contract. The Fourth Circuit disagreed, concluding:

> ... **By its terms, however, the arbitration clause requires both Adkins and Labor Ready to arbitrate any employment-related claims either might have.** Because "no consideration [is required] above and beyond the agreement to be bound by the arbitration process" for any claims brought by the

employee, *Johnson v. Circuit City Stores,* 148 F.3d 373, 378 (4th Cir.1998), **Labor Ready's promise to arbitrate its own claims is *a fortiori* adequate consideration for this agreement.**

> Adkins argues that this promise was "illusory" but advances no convincing reasons to support this assertion. His contention that Labor Ready has no reciprocal rights against its employees under worker protection provisions, while obviously true, does not by itself demonstrate that Labor Ready's promise to arbitrate its own claims is meaningless. **At bottom, Adkins appears to contend that Labor Ready could possess no conceivable claims against its at-will employees, ignoring the fact that in every employment relationship, each side bears reciprocal obligations to the other.** *See, e.g.,* Am. Jur.2d Employment Relationship § 222 (2002) (employee liable to employer for any profit received as the result of a breach of employee's duty of loyalty). **There was plainly adequate consideration here to support the formation of a contract.**

303 F.3d at 501 (emphases added).

In *Raasch v. NCR Corporation, supra,* the court upheld a mandatory arbitration policy imposed upon an at-will employee after he had already been employed for some time. The policy stated, as does the policy in the instant action, that continued employment, along with acceptance of any future pay raises, promotions, bonuses, and the like, would constitute acceptance of the policy. Although Raasch attacked the policy for failure to evince a mutuality of obligation, the court rejected that argument:

> ... Raasch contends that because the arbitration provision excepts from its coverage certain disputes, which it contends are typical of the kind which NCR

itself would be most likely to initiate, it lacks mutuality, presumably because NCR retains the right to go to court for disputes it is more likely to initiate whereas its employees do not retain that right for disputes they are more likely to initiate. Even if the disputes excepted from ACT would generally be of the type NCR itself would be more likely to initiate, it miscomprehends the mutuality of obligation doctrine to state that this poses a problem. **Mutuality requires only that both Raasch and NCR be bound to the terms of any dispute that is required to be submitted to the arbitrator**. For example, NCR cannot expect Raasch to be bound by the arbitrator's ruling on a question of age discrimination if it retains the right to reject the ruling in the event it is ultimately unfavorable to it, or if it retains the right to change the ground rules on how the arbitrator is permitted to reach its conclusion. **Upon review, the Court finds no indication in ACT's provisions that NCR has withheld its own obligation to abide by any decision rendered by an arbitrator pursuant to a Stage 3 dispute. That is all that is required insofar as mutuality of obligation is concerned**; nothing in that doctrine requires that just because both parties agree to arbitrate discrimination disputes and the like they also must agree to arbitrate every other type of dispute.

254 F.Supp.2d at 856–57 (footnotes omitted; emphases added). The court concluded that there was mutuality of obligation because "NCR, as with Raasch, must proceed through the non-judicial stages with

respect to any dispute subject to [the arbitration agreement]." *Id.* at 857.

■ Here, as in both *Adkins* and *Raasch*, both the employee and the employer are required to take certain defined disputes to arbitration and be bound by the outcome. Further, although the Company retained the right to change many of its policies without any notice to its employees, it specifically prohibited itself from making any changes to the mandatory arbitration policy. This reciprocal agreement, coupled with the prohibition on making changes, was clearly a detriment to the Company which constituted valid and sufficient consideration to support the arbitration agreement. As in both *Adkins* and *Raasch*, the Company here sought assent to the arbitration agreement by way of plaintiff's continued employment, an assent which plaintiff gave.[8]

Therefore, this Court concludes, as a matter of law, that the Program was a binding agreement which requires that plaintiff resolve her claims against the Company through arbitration.

Plaintiff's final argument—that a jury must determine whether the Program constitutes a binding agreement to arbitrate— is without merit. The FAA provides that the *Court* need only be "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement[.]" 9 U.S.C. § 3. That test has been met in the instant case.

The final issue which this Court must address is the Company's request to recover its costs, attorney's fees and expenses in the instant action under the following provision in the Program:

---

**8.** The Court notes that the employees were informed of this new Program at least as early as September 7, 2001, even though the Program was not to take effect until October 1, 2001. Therefore, there was sufficient notice to employees who might have chosen not to continue their employment, even though, since they were at-will employees, the Company had no duty to give notice. Plaintiff certainly cannot argue that she was somehow forced into acceptance.

5. If either party pursues a legal claim covered by the Dispute Resolution Program in court by any means other than arbitration, the responding party shall be entitled to stay or dismissal of such action, the remand of such action to arbitration, and the recovery of all costs and attorney's fees and expenses related to such action.

(Motion, Exh. A, at 6). This paragraph is contained in the Program as the fifth numbered paragraph in a section captioned "Arbitration Fees and Costs." The other four paragraphs deal with the following: (1) that the party seeking arbitration must pay $120 to the arbitration agency; (2) that either party may engage a court reporter at the party's own expense; (3) that each party will be responsible for its own attorney's fees, if any, except that the arbitrator may award reasonable fees to a party prevailing on a statutory claim that allows such party to recover attorney's fees; and (4) that the arbitrator may assess attorney's fees against a party whose claim is frivolous, unreasonable or factually groundless.

This Court has now concluded that the Program is an enforceable contract requiring arbitration. That is the end of the road for these proceedings. Resolution of the employment dispute, including the award of any attorney's fees available under the above-cited section of the Program, is a matter for the arbitrator.

█ Finally, the Company in the instant case has not moved to compel arbitration, but has only sought a stay pending arbitration.[9] This Court has now determined that the dispute is arbitrable under the Program. Although the Company did not specifically move to compel arbitration, this Court concludes that it is implicit in the Company's request for a stay *pending* arbitration, that the Company is clearly seeking an order compelling arbitration. At present, there is no pending arbitration. Therefore, if neither party initiates arbitration proceedings, this action will remain stayed indefinitely. That is clearly unacceptable.

Since the Program provides that the arbitrator's decision is "final [and] binding" (Motion, Exh. A, at 4), the Court concludes that it is appropriate to construe the Company's motion as one to compel arbitration, to grant such motion, and to dismiss this action. *See Arnold v. Arnold Corp.*, 920 F.2d 1269 (6th Cir.1990); *Orcutt v. Kettering Radiologists, Inc.*, 199 F.Supp.2d 746 (S.D.Ohio 2002) (holding that dismissal rather than a stay is appropriate where an arbitrator's decision would be final and binding, once the court determines that the dispute is indeed arbitrable).

Finally, the Court feels compelled, in view of the order of dismissal to address one final matter. The Company has not suggested in any of its pleadings that plaintiff is "in default in proceeding with ... arbitration[,]" 9 U.S.C. § 3, although admittedly the Company made a boilerplate mention of untimeliness in its fourteenth affirmative defense. (*See,* Doc. No. 5). The Court notes that there is a notice provision in the Program which requires a party seeking arbitration to give notice "within one year or within the applicable statute of limitations, whichever is longer." Absent such notice, "the claims shall be void and deemed waived." Presumably,

---

**9.** Presumably this is because a ruling on a motion to compel arbitration is usually immediately appealable whereas a ruling on a motion to stay pending arbitration is not. In the former instance, the court would dismiss the action and relinquish jurisdiction; in the latter, jurisdiction is usually retained. *See Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 311 (6th Cir.2000) (citing 9 U.S.C. § 16(b); *Arnold v. Arnold Corp.,* 920 F.2d 1269, 1275 (6th Cir.1990)).

counsel for the Company, as an officer of the Court, would have told the Court if, in the Company's view, granting this motion would completely preclude plaintiff's pursuit of her claims. Since there has been no such suggestion, the Court is assuming that the Company is not hiding a "gotcha" in its back pocket, that is, the Court assumes that the Company did not make this motion with the full intention, if it were granted, to only then raise the argument that arbitration has been waived due to untimely notice. The Court trusts that the Company has taken seriously the following statements in the Dispute Resolution Program, which this Court has found binding:

> The Company is committed to building a strong relationship between the Company and all of our employees—a relationship that is based on trust and open communications . . . .

> We understand, however, that problems and disagreements are unavoidable when people with different viewpoints spend a lot of time together. We cannot entirely eliminate disagreements, but we can provide a process for resolving them when they do occur by taking prompt, constructive action.

(Motion, Exh. A, at 1). This Court explicitly finds that plaintiff's bringing of this action appears to have been in good faith, based on a legitimate (although erroneous) interpretation of the applicability of the Program, in view of her belief that she had not assented to the Program. Therefore, in the Court's view, so long as this action was timely brought within the relevant statutes of limitation, any deadlines under the Program would have been tolled during the pendency of these proceedings. Further, since the Company has strenuously argued that it has not waived its right to have these disputes arbitrated by its removal of the action to this Court, the Court assumes that the Company actually believes that these disputes are *still* arbi-

trable within the provisions of the Program.

### III. CONCLUSION

For the reasons set forth above, the Company's motion for a stay of judicial proceedings pending arbitration, construed as a motion to compel arbitration, is granted. Further, since any decision by the arbitrator will, under the Program, be final and binding upon both Dantz and the Company, the Court DISMISSES this action, rather than granting a stay, leaving the question of attorney's fees to the arbitrator to resolve under the terms of the Program.

Further, the Court REMANDS only Court IV and VI and only with respect to defendant Michael Sanders, who is now strongly encouraged to obtain counsel and admonished to promptly file in the Court of Common Pleas of Summit County, Ohio a motion for leave to file his answer to plaintiff's complaint.

Finally, the Clerk is directed to serve a copy of this Memorandum Opinion and Order upon Michael Sanders at the address on the docket and, for record purposes, *to file a certificate of such service.*

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons set forth in the Memorandum Opinion and Order filed contemporaneously with this Judgment Entry, IT IS HEREBY ORDERED, ADJUDGED and DECREED:

(1) that Counts IV and VI, to the extent they seek to hold defendant Michael Sanders individually liable under Ohio law, are REMANDED to the Court of Common Pleas of Summit County, Ohio;

(2) that the defendant's motion for a stay of judicial proceedings pending ar-

bitration, construed with respect to defendant Apple Ohio LLC as a motion to compel arbitration, is GRANTED; and,

(3) that, since any decision by the arbitrator will be final and binding on both the plaintiff and the defendant employer, the Court DISMISSES this action, rather than granting a stay, leaving the question of attorney's fees to the arbitrator to resolve under the terms of the arbitration agreement.

Case closed.