OPINION
{¶ 1} Plaintiff-appellant, LeeAnn Corl, appeals from a judgment of the Franklin County Court of Common Pleas granting the motion of defendant-appellee, Thomas King dba Applebee's Restaurant ("Applebee's"), to stay the case pending arbitration. Because the arbitration agreement is valid, enforceable, and is not unconscionable, we affirm.
 {¶ 2} On September 11, 1997, plaintiff began working as a server for defendant Applebee's at its 4600 East Broad Street location. Promoted to assistant manager in 2002, plaintiff underwent new manager orientation. During the orientation, plaintiff was provided with a copy of the company's manager handbook that contained various policies, including the Dispute Resolution Program ("DRP"). According to the handbook, the DRP consists of four steps. Under the first step, the employee is to communicate with his or her immediate supervisor. The second step requires communication with the director of Guest and Employee Relations, and the third step provides for Executive Review. The final step requires that employees and the company utilize arbitration if either the employee or company wishes to pursue the unresolved matter to a binding conclusion.
 {¶ 3} Plaintiff signed a policy acknowledgement form indicating she read and understood the policies contained in the manager handbook. The policy acknowledgement form listed and gave a description of each policy; plaintiff wrote her initials next to each policy, including the DRP. Because plaintiff was promoted to manager, plaintiff also was required to be familiar with the employee handbook; plaintiff signed a comprehensive orientation checklist that reflected Applebee's policies, including the DRP, applicable to employees.
 {¶ 4} According to plaintiff, as an assistant manager she was responsible for closing the restaurant at night. Applebee's closing policy required the manager on duty to remain in the restaurant until the other employees left. At that point, the manager either was to lock the money in a safe or take the money to the bank for deposit. In the event the manager took the money to the bank, the manager could request a police escort to his or her vehicle, as the restaurant was located in an area of reported criminal activity. Plaintiff alleges she requested a police escort even when she was not taking the money to the bank, but Applebee's refused to provide the escort.
 {¶ 5} On January 25, 2004, plaintiff was attacked while she was closing the restaurant. According to plaintiff, she secured the money in the safe per policy, and, as she exited the restaurant, a former employee and convicted felon brought plaintiff to the ground and dragged her back into the restaurant. As he did so, the restaurant alarm went off; the perpetrator compelled her to disable the alarm system. Screaming at her during the entire ordeal, the attacker forced a knife to her throat. After plaintiff complied with the perpetrator's demands, he locked plaintiff in a closet and fled the restaurant with the money from the safe, the registers, and plaintiff's purse.
 {¶ 6} As a result of the incident, plaintiff informed Applebee's she would return to work if Applebee's would provide police escorts for managers closing the restaurant, regardless of whether they were making bank deposits. Applebee's denied plaintiff's request. Plaintiff terminated her employment with Applebee's and filed suit, claiming wrongful discharge and intentional tort arising from Applebee's failure to implement proper safety precautions for employees. Pursuant to R.C. 2711.02
and Section 3, Title 9, U.S. Code of the Federal Arbitration Act, Applebee's filed a motion to dismiss or, alternatively, a motion to stay the proceedings pending arbitration. The trial court granted the motion to stay, finding the arbitration agreement valid and enforceable. Plaintiff appeals, assigning the following errors:
FIRST ASSIGNMENT OF ERROR
THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO ADEQUATELY DETERMINE THE VALIDITY OF THE ARBITRATION POLICY BEFORE GRANTING THE MOTION TO STAY PROCEEDINGS.
SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT WRONGLY DETERMINED THAT THE ARBITRATION POLICY WAS NOT UNCONSCIONABLE.
 {¶ 7} R.C. 2711.01(A) provides that an agreement to settle controversies or disputes by arbitration shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract. If an "action is brought upon any issue referable to arbitration under an agreement in writing for arbitration," the trial court, "upon being satisfied that the issue involved in the action is referable to arbitration * * * shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had * * *." R.C. 2711.02(B). An order staying the proceedings pending arbitration is a final order and may be reviewed, affirmed, modified, or reversed on appeal. R.C.2711.02(C).
 {¶ 8} A valid arbitration agreement, like any contract, requires an offer and acceptance that is supported by consideration and is premised on the parties' meeting of the minds as to the essential terms of the agreement. Miller v.Lindsay-Green, Inc., Franklin App. No. 04AP-848, 2005-Ohio-6366;Dantz v. Apple Ohio LLC (N.D.Ohio 2003), 277 F.Supp.2d 794. Consideration may consist of either a detriment to the promisee or a benefit to the promisor. Lake Land Emp. Group of Akron, LLCv. Columber, 101 Ohio St.3d 242, 2004-Ohio-786. An arbitration agreement must be in writing in order to be enforceable under R.C. Chapter 2711, even though the parties need not sign the agreement; nor does the law require that an arbitration agreement be explained orally to a party prior to his or her signature.ABM Farms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 503; Brummv. McDonald Company Securities, Inc. (1992),78 Ohio App.3d 96.
 {¶ 9} Arbitration is strongly encouraged as a method to settle disputes. Williams v. Aetna Finance Co. (1998),83 Ohio St.3d 464. "A presumption favoring arbitration arises when the claim in dispute falls within the scope of the arbitration provision." Id. at 471. "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." Id.
 {¶ 10} Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which [she] has not agreed so to submit." Peters v. Columbus SteelCastings Co., Franklin App. No. 05AP-308, 2006-Ohio-382, at ¶ 11, quoting Council of Smaller Enterprises v. Gates, McDonald Co. (1998), 80 Ohio St.3d 661, 665 (citation omitted). Generally, appellate courts review a trial court's decision to grant a stay pending arbitration under an abuse of discretion standard. Peters, supra. The de novo standard of review nonetheless is proper when the issue presents a question of law. Id. The validity of an arbitration agreement involves a mixed question of law and fact. Because the trial court here did not hold a hearing to make factual findings, we apply only the undisputed facts to the law to determine whether a valid agreement exists.
 {¶ 11} In the first assignment of error, plaintiff asserts the trial court failed to adequately determine the validity of the arbitration agreement. More specifically, plaintiff contends the trial court erred in finding that acceptance of the mandatory arbitration agreement was a condition of continued employment and demonstrated mutual assent to the agreement. Plaintiff argues instead that, because she already was promoted to manager prior to her signing the acknowledgement form during manager orientation, acceptance of the DRP could not be required for her continued employment as a manager.
 {¶ 12} Although the rationale plaintiff employs to support her first argument arguably mixes the concepts of mutual assent and consideration, we address plaintiff's contentions that the evidence reveals a lack of mutual assent. Mutual assent consists of an offer by one party and acceptance of that offer by another party. Miller, supra; Bennett v. American Electric Power Serv.Corp. (Sept. 27, 2001), Franklin App. No. 01AP-39.
 {¶ 13} Plaintiff claims she was officially promoted to assistant manager prior to October 1, 2002, but she does not provide a specific date in her complaint or otherwise. The affidavit of Nicole Walls, Regional Recruiting Manager, states that plaintiff began working as a manager on October 1, 2002. The affidavit of Stan Warr, Regional Vice-President of Operations at the time, indicates plaintiff attended orientation on October 1, 2002 "upon being hired" into management, thus suggesting that orientation immediately followed plaintiff's promotion. Regardless of when plaintiff was promoted to manager, the first issue in plaintiff's first assignment of error is whether plaintiff manifested her assent to be bound by arbitration, and the date of plaintiff's promotion in relation to the date of her orientation program does not determine that issue.
 {¶ 14} Plaintiff undisputedly went through manager orientation on October 1, 2002 with another employee, Marvin McCabe. Walls and Warr conducted the orientation session. Plaintiff received a manager's handbook during the orientation that included Applebee's four-step DRP, culminating in binding arbitration. Plaintiff signed the policy acknowledgement form stating she received the manager handbook, and she initialed the separate lists of Applebee's policies, including the DRP.
 {¶ 15} As to the DRP, the form states: "I agree that in the event a dispute arises between the Company and me, I will utilize all steps of the [DRP] to submit any dispute arising during or following my employment with the Company to binding arbitration. I understand that binding arbitration will be the sole and exclusive method for resolving any claims or disputes." It further states plaintiff "received an explanation of the Program with my orientation materials." The bottom of the form near the signature line states "I agree that I have read and understand the policies stated above * * *."
 {¶ 16} In response to those terms, plaintiff claims she was given the documents at orientation and, without any explanation of the contents, was instructed to sign them. Although Walls and Warr dispute plaintiff's assertion that she received no explanation of the documents, we accept it for purposes of resolving plaintiff's appeal. Even so, plaintiff's assertion that the agreement is invalid for lack of mutual assent is unpersuasive.
 {¶ 17} The policy acknowledgement form plaintiff signed specifically states "I agree" and "I will utilize all steps of the [DRP] to submit any dispute * * * to binding arbitration." The DRP was not in fine print or hidden from plaintiff, and the policy acknowledgement form required plaintiff's initials to demonstrate that she specifically agreed to each policy. While plaintiff claims Applebee's provided no explanation of those terms, nothing requires that an arbitration agreement be explained orally to a party prior to obtaining the party's signature. ABM Farms; Brumm, supra.
 {¶ 18} Rather, plaintiff's act of initialing the DRP and signing the form is sufficient to demonstrate she read and understood its terms and specifically agreed to binding arbitration as the sole and exclusive method of resolving employment disputes. Cunningham Malhoit v. Salomon Smith Barney,Inc., Lucas App. No. L-02-1277, 2003-Ohio-2795 (holding that employee handbook receipt forms were binding contracts where the employee agreed to comply with the handbook's policies and specifically agreed to be bound by the arbitration provision);Pennington v. Frisch's Rest., Inc. (C.A.6, 2005), 147 Fed.Appx. 463 (finding that employees' signatures on forms acknowledging their receipt of the terms of the arbitration plan in the handbook were sufficient to demonstrate their assent to the terms of the plan).
 {¶ 19} Further, plaintiff does not claim she was forced or coerced into signing anything at the risk of losing her job. In essence, plaintiff seeks to avoid the terms of the agreement to which she consented. "The parties to an agreement should be able to rely on the fact that affixing a signature which acknowledges one has read, understood, and agrees to be bound by the terms of an agreement means what it purports to mean." Butcher v. BallyTotal Fitness Corp., Cuyahoga App. No. 81593, 2003-Ohio-1734, at ¶ 35; ABM Farms; Brumm, supra. "A person of ordinary mind cannot be heard to say that [she] was misled into signing a paper which was different from what [she] intended, when [she] could have known the truth by merely looking when [she] signed."Garcia v. Wayne Homes, LLC (Apr. 19, 2002), Clark App. No. 2001CA53, quoting McAdams v. McAdams (1909), 80 Ohio St. 232.
 {¶ 20} Plaintiff also contends the evidence fails to demonstrate consideration for the agreement to arbitrate. Where, however, both parties agree to take certain disputes to arbitration and to be bound by the outcome, sufficient consideration exists. Dantz, supra; Adkins v. Labor Ready,Inc. (C.A.4, 2002), 303 F.3d 496; Raasch v. NCR Corp.
(S.D.Ohio 2003), 254 F.Supp.2d 847. No consideration is required above and beyond the agreement to arbitrate. Dantz, supra. Here, both plaintiff and Applebee's agreed to be bound by arbitration.
 {¶ 21} Moreover, plaintiff was an at-will employee subject to termination at any time. The manager handbook and the policy form confirm that nothing in them is intended to alter plaintiff's at-will status. At-will employment is contractual in nature.Lake Land Emp. Group, at ¶ 17 (involving an agreement not-to-compete). The employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee. Id. The employer or the employee may legally terminate the relationship at any time for any reason, and either may propose to change the terms of their employment relationship at any time. Id. "Thus, mutual promises to employ and to be employed on an ongoing at-will basis, according to agreed terms, are supported by consideration: the promise of one serves as consideration for the promise of the other." Id. at ¶ 18. Where an employer makes a proposal to renegotiate the terms of the parties' at-will employment, and the employee assents to it, thereby accepting continued employment according to the new terms, consideration supporting the new agreement exists. Id. at ¶ 19. The employee's assent to the agreement is given in exchange for the employer's forbearance from discharging the employee. Id.
 {¶ 22} When Applebee's presented the DRP to plaintiff, an at-will employee, it proposed to renegotiate the terms of the parties' relationship, not an unusual occurrence in light of plaintiff's being promoted to a manager position. Had plaintiff not accepted the DRP, Applebee's was free to terminate plaintiff's employment. Similarly, if plaintiff disagreed with any documents she signed, she was free to look elsewhere for employment. Butcher, supra; Morrison v. Circuit City Stores,Inc. (S.D.Ohio 1999), 70 F.Supp.2d 815 (noting that if an applicant for employment disagrees with anything the applicant must sign, he or she is free to look elsewhere for employment). Accordingly, even if plaintiff were promoted to manager prior to October 1, 2002, plaintiff's continued employment with Applebee's and Applebee's forbearance from discharging plaintiff served as consideration needed to form an agreement.
 {¶ 23} In a related argument, plaintiff contends the trial court erred in failing to conduct a hearing to determine which of three agreements, or handbooks, applied to plaintiff's claims. Plaintiff contends the differences between the agreements, provided to plaintiff since this litigation ensued, are such that she could not have agreed to arbitration. For example, one handbook states that arbitration is "mandatory," while another version does not.
 {¶ 24} Any differences in the handbooks provided after plaintiff left Applebee's do not change the fact that plaintiff signed a separate policy acknowledgement form on October 1, 2002 and specifically agreed to binding arbitration as plaintiff's sole and exclusive method of resolving disputes. Pennington,
supra (noting that even assuming the more recent 2003 agreements were ineffective as to four employees, each of them signed a similar agreement in 2002 agreeing to arbitrate claims);Cunningham Malhoit, supra. Accordingly, plaintiff's argument is unpersuasive.
 {¶ 25} Plaintiff next maintains that arbitration applies only to current employees, not former employees who have brought litigation against the company. Plaintiff claims that to apply the four-step DRP to former employees is nonsensical, because the first three steps require the employee to attempt resolution through management or Applebee's executives. In response, Applebee's contends plaintiff did not raise the issue in the trial court and has waived the issue on appeal. Because plaintiff argued generally in the trial court that the arbitration agreement is invalid, we address her more specific contention on appeal.
 {¶ 26} The agreement between the parties, as well as the law of contracts, controls the relationship of the parties to an arbitration agreement. Brumm, supra. In construing a contract, a court attempts to effectuate the intent of the parties. Grinerv. UNUM Life Ins. Co. (Feb. 27, 2001), Franklin App. No. 00AP-678. The intent of the parties is presumed to reside in the language employed by the parties. Id. If the language is clear and unambiguous, a court must enforce the contract as written.Holliman v. Allstate Inc., Co. (1999), 86 Ohio St.3d 414.
 {¶ 27} Here, the language contained in the policy acknowledgement form plaintiff signed is clear and unambiguous. It provides: "I agree that in the event a dispute arises between the Company and me, I will utilize all steps of the [DRP] to submit any dispute arising during or following my employment with the Company to binding arbitration." Because the language is clear and unambiguous that arbitration is the remedy for any claim or dispute that arises during an individual's employment or following employment, we enforce the contract as written. Were plaintiff's argument accepted, any employee who agreed to arbitrate disputes could quit his or her job, then immediately file a lawsuit, and by that action eviscerate the agreement to arbitrate following employment. Former employees proceed directly to arbitration to resolve the dispute and do not utilize the first three steps of the DRP. See, also, Int'l Brotherhood ofTeamsters v. City of Toledo (1988), 48 Ohio App.3d 11;Neubrander v. Dean Witter Reynolds, Inc. (1992),81 Ohio App.3d 308 (concluding that an arbitration clause in a contract gives rise to a presumption that the particular grievance is subject to arbitration unless it is expressly excluded).
 {¶ 28} Accordingly, plaintiff's first assignment of error is overruled.
 {¶ 29} Plaintiff's second assignment of error asserts the trial court erred in failing to find the agreement to arbitrate is unconscionable. Unconscionability is defined as the absence of meaningful choice on the part of one of the parties to a contract whose terms are unreasonably favorable to the other party.Cronin v. California Fitness, Franklin App. No. 04AP-1121,2005-Ohio-3273, citing Dorsey v. Contemporary Obstetrics Gynecology, Inc. (1996), 113 Ohio App.3d 75. Arbitration clauses are unconscionable where clauses are so one-sided as to oppress or unfairly surprise a party. Eagle v. Fred Martin Motor Co.,157 Ohio App.3d 150, 2004-Ohio-829. In assessing whether a given contract provision is unconscionable, courts examine the facts and circumstances surrounding creation of the agreement. Id. The issue of whether an arbitration provision is unconscionable is a question of law subject to de novo review. Porpora v. GatliffBldg. Co., 160 Ohio App.3d 843, 2005-Ohio-2410; English v.Cornwell Quality Tools Co., Summit App. No. 22578,2005-Ohio-6983.
 {¶ 30} Unconscionability has been found in cases involving consumer transactions for expensive necessities such as automobiles and homes. See Eagle, supra (involving a low-income single mother purchasing an automobile from a dealership and determining the arbitration clause in the purchase agreement was unconscionable where the consumer had no choice but to sign);Porpora, supra (involving a husband and wife who contracted with a home builder and determining the arbitration provision was unconscionable where the builder would not do business with anyone who did not accept arbitration clause, builder did not disclose or explain the provision, and the consumers were not represented by counsel and had no prior experience with construction contracts).
 {¶ 31} In Ohio, the party claiming that an agreement is unconscionable must demonstrate (1) substantive unconscionability, meaning unfair contract terms, and (2) procedural unconscionability, meaning individualized circumstances surrounding the parties to a contract such that no voluntary meeting of the minds was possible. Cronin, supra. "A certain `quantum' of both substantive and procedural unconscionability must be present to find a contract unconscionable." Id., citing Collins v. Click Camera Video,Inc. (1993), 86 Ohio App.3d 826. To determine whether an agreement is substantively unconscionable, courts examine whether the actual terms of the contract are unfair and commercially unreasonable. Cronin, supra. On the other hand, procedural unconscionability concerns the formation of the agreement. To determine whether a contract provision is procedurally unconscionable, courts consider whether the parties had relatively unequal bargaining position due to age, education, or intelligence, whether the terms of the provision at issue were explained to the weaker party, whether alterations in the printed terms were possible, and whether the party challenging the provision was represented by counsel. English, supra.
 {¶ 32} Plaintiff contends the arbitration agreement is substantively unconscionable because, in her opinion, the terms are clearly one-sided and oppressive. Plaintiff initially notes the $120 filing fee for employees and claims the agreement is unfair because it does not identify any fee to Applebee's. An arbitration fee, however, does not render an arbitration agreement unconscionable where it does not deter the aggrieved party from initiating arbitration. Garcia, supra (holding that the undisclosed costs of arbitration did not render the provision unconscionable where appellants did not claim the costs were so substantial as to deter them from bringing their claims or that arbitration was an unreasonable alternative); English, supra (finding the potential cost of arbitration alone insufficient to prove that arbitration was an unreasonable alternative to litigation).
 {¶ 33} Unlike the provisions in Garcia and English, where the court found that even undisclosed costs were insufficient to render the agreement unconscionable, the agreement in this case expressly states that the filing fee is $120, a fee plaintiff does not allege she is unable to pay. The agreement also provides the employee is not responsible for any arbitrator's fees, and the agreement further reduces the costs of resolving the dispute by providing that if the employee chooses not to employ an attorney to assist with the dispute, Applebee's will not hire a lawyer. Other than the initial filing fee, plaintiff points to no evidence either that the costs of arbitration would be so substantial as to deter her from bringing her claim or that arbitration is an unreasonable alternative to litigation in a judicial forum. Cronin, supra (noting that appellant failed to allege that the cost of arbitration effectively deterred appellant from enforcing the arbitration provision).
 {¶ 34} Plaintiff next claims that the arbitration agreement is substantively unconscionable because the arbitrator may assess costs and attorney fees against employees who bring frivolous claims, but is silent as to costs and fees assessed against Applebee's. Although the agreement is silent in that regard, the agreement authorizes the arbitrator to grant any remedy available to the employee through a court of law. Costs and attorney fees potentially could be included in such a remedy. Given the directives in the agreement, plaintiff's contention that the agreement is one-sided is unpersuasive.
 {¶ 35} Plaintiff further contends that the arbitration agreement is substantively unconscionable because Applebee's reserves the right to assert multiple claims against plaintiff that are exempt from arbitration, while plaintiff is not afforded any similar exceptions. Plaintiff does not point to any specific examples to support her contention. The DRP does not cover claims for employee benefits under a benefit plan, claims for injunctive or other equitable relief, and criminal complaints or employee restitution for a criminal act for which the employee has been found guilty or pleaded guilty or no contest. The exemptions apply equally to plaintiff and Applebee's; nothing in the DRP indicates otherwise. Accordingly, plaintiff fails to demonstrate how the agreement is unconscionable based on the listed exemptions.
 {¶ 36} Finally, plaintiff asserts the agreement is substantively unconscionable because, pursuant to the policy acknowledgement form plaintiff signed, Applebee's may change or delete provisions of the DRP at any time. Although the acknowledgement form so states, Applebee's may not eliminate an employee's right to arbitration with an independent arbitrator, and that is the provision at issue. See Morrison, supra (finding no unconscionability in arbitration agreement even though employer could alter or terminate the arbitration agreement or the rules and procedures at certain times after providing 30 days notice); cf. Harmon v. Philip Morris, Inc.
(1997), 120 Ohio App.3d 187 (finding significant the employer's right to terminate arbitration program at any time and the unilateral nature of program binding only on employees). Moreover, plaintiff does not contend Applebee's plans to change or delete provisions of the DRP. Because plaintiff no longer is employed with Applebee's, the possibility that Applebee's could attempt to change a provision of the DRP is insufficient to render the agreement unconscionable at this juncture.
 {¶ 37} In short, the arbitration agreement is not substantively unconscionable because it binds both parties equally, the provision on the policy acknowledgement form is not hidden or in fine print, plaintiff specifically agreed to the provision by signing her initials next to it, and plaintiff does not claim that the cost will deter her from enforcing the provision. Because the agreement is not substantively unconscionable, we need not address whether it is procedurally unconscionable. Plaintiff's second assignment of error is overruled.
 {¶ 38} Having overruled plaintiff's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
French and McGrath, JJ., concur.