Joseph F. **PELTZ**, Administrator and Personal Representative of the Estate of Elizabeth Ann Peltz, deceased, et al.

v.

**SEARS, ROEBUCK AND CO.**

No. Civ.A.04–1712.

United States District Court, E.D. Pennsylvania.

March 8, 2005.

David L. Kwass, Saltz, Mongeluzzi, Barrett & Bendesky, Philadelphia, PA, Robert J. Mongeluzzi, Philadelphia, PA, for Plaintiffs.

Robert L. Sanzo, Eckert, Seamans, Cherin & Mellott, PC, Philadelphia, PA, A. Christopher Young, Francis P. Devine, III, Pepper Hamilton, LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM

BARTLE, District Judge.

Plaintiff Joseph F. Peltz, in his own right and as Administrator of the Estate of Elizabeth Ann Peltz, and plaintiff Henry Vahey, in his own right and as Administrator of the Estate of John Leo Vahey, bring this diversity action against defendant Sears, Roebuck and Company ("Sears").

They assert claims under the Pennsylvania Wrongful Death Act, 42 PA. CON. STAT. ANN. § 8301 and the Pennsylvania Survival Act, 42 PA. CON. STAT. ANN. § 8302, for negligence, strict liability, and breach of warranty. The plaintiffs allege that on August 20, 2002, during an extremely hot summer in Philadelphia, Elizabeth Ann Peltz, age 49, and John Leo Vahey, age 61, died of heat exposure in their home when their wall-unit air-conditioner malfunctioned and Sears failed to repair it promptly.

Before the court is the motion of the plaintiffs for voluntary dismissal without prejudice under Rule 41(a)(2) of the Federal Rules of Civil Procedure. Sears also moves to compel arbitration.

Plaintiffs originally filed their complaint against Sears in the Court of Common Pleas of Philadelphia County on March 17, 2004. Sears timely removed the case to this court on the basis of diversity jurisdiction. On May 25, 2004, the plaintiffs filed an amended complaint to include, among other things, reference to a Sears maintenance agreement signed by Elizabeth Ann Peltz.

On August 19, 2004, the plaintiffs filed a second action by writ of summons in the Court of Common Pleas of Philadelphia County. In that action they named home health care providers of the decedents, Dr. House Call, Inc., and Continuous Home Care, Inc., as defendants in addition to Sears. On December 1, 2004, a case management conference was held in the state action, during which a discovery schedule and trial date were set. That same day, Sears filed a motion in this court to compel arbitration of the matter in accordance with the terms of a maintenance agreement that covered the air-conditioning unit. Thereafter, on December 13, 2004, the plaintiffs filed their motion for voluntary dismissal of this federal action without prejudice.

## I.

█ We first consider the motion of the plaintiffs to dismiss this action under Rule 41(a)(2) of the Federal Rules of Civil Procedure. This rule provides that if an answer has been served as has occurred here "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."

█ A dismissal should be allowed unless it will cause substantial prejudice to the defendant. *See Miller v. Trans World Airlines, Inc.*, 103 F.R.D. 20, 21 (E.D.Pa. 1984); *see also Mobil Oil Corp. v. Advanced Environmental Recycling Tech., Inc.*, 203 F.R.D. 156, 158 (D.Del.2001). Courts have considered the following factors to determine whether such a dismissal is proper: (1) whether the expense of a second litigation would be excessive and duplicative; (2) how much effort and expense has been expended by the defendant in preparing for the current trial; (3) the extent to which the current suit has progressed; (4) the plaintiff's diligence in bringing the motion to dismiss; and (5) whether the attempt at dismissal is designed to evade federal jurisdiction and frustrate the purpose of the removal statute. *See Total Containment, Inc. v. Aveda Mfg. Corp.*, Civ.A. No. 90–4788, 1990 WL 290146, at * 2 (E.D.Pa. Dec.7, 1990); *Mobil Oil Corp.*, 203 F.R.D. at 158; *Myers v. Hertz Penske Truck Leasing, Inc.*, 572 F.Supp. 500, 502–03 (N.D.Ga.1983).

In *Myers*, the plaintiff sought dismissal of the action that had just been removed to federal court so that he could proceed with an identical state court action. 572 F.Supp. 500. He had joined two employees of the original defendant in the state court action who were acting within the scope of their employment and whose negligence could be imputed to their employer under the doctrine of respondeat superior.

The employees, who were residents of the forum state, could not be joined in the federal action because removal is not authorized where any named defendant is a resident of the forum state. *See* 28 U.S.C. § 1441(b). The plaintiff knew the identities of these two employees at the time he first filed suit. He sought no additional damages from them. The court found that the motion to dismiss could only be explained as an attempt to defeat removal. *Myers,* 572 F.Supp. at 502–03.

The case at bar is strikingly similar to *Myers.* The two home health care providers cannot be joined in this action since their presence would defeat diversity. At the time the original suit was filed, the plaintiffs knew that the decedents were receiving home health care. The plaintiffs argue that they had difficulty in ascertaining the identity of the home health care providers. However, the plaintiffs did not need to file their initial complaint in March, 2004 with Sears as the only defendant. At that time, they still had five months before the limitation period would run in which to discover the names of the home health care providers and file one lawsuit against all of the defendants. Moreover, it was not until after Sears filed a motion to compel arbitration with this court that the plaintiffs filed their motion to dismiss. Their motion comes some four months after they had discovered the identity of the home health care providers and had brought the second state court action which, we note, was instituted merely by filing a writ of summons. *See* Pa. R. Civ. P. 1007.

As in *Myers,* we find that plaintiffs here are attempting to defeat removal to this court. Accordingly, the motion of the plaintiffs to dismiss this action without prejudice will be denied.

## II.

We next turn to the motion of the defendant to compel arbitration. Although the date is unclear, Ms. Peltz had purchased a Maintenance Agreement ("MA") for the air-conditioner that included an arbitration clause. The arbitration clause is very broad and provides that:

Any and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise, including statutory, common law, fraud, other intentional tort, property and equitable claims) arising out of, relating to, or in connection with (1) this Agreement, (2) the relationships which result from this Agreement, or (3) the validity, scope or enforceability of this arbitration provision or the entire Agreement ("Claim"), shall be resolved, on an individual basis without resort to any form of class action, by final and binding arbitration before a single arbitrator. The arbitrator selected pursuant to this arbitration clause shall be a lawyer or retired judge with not less than 15 years experience in the practice of law.... Upon written request, Sears will advance to you either all or part of the fees of the AAA and of the arbitrator. The arbitrator will decide whether you or Sears will be ultimately responsible for these fees. The arbitrator shall apply relevant, substantive law and applicable statutes of limitation and shall provide written, reasoned findings of fact and conclusions of law. The arbitration Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et. Seq. [sic] If any portion of this arbitration provision is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this arbitration provision.... YOU AND SEARS UNDERSTAND AND AGREE

THAT BECAUSE OF THIS ARBITRATION CLAUSE NEITHER YOU NOR SEARS WILL HAVE THE RIGHT TO GO TO COURT EXCEPT AS PROVIDED ABOVE OR TO HAVE A JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM.

Maintenance Agreement, ¶ 12.

 The MA specifically references the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* The policy of Congress, in enacting the FAA, is one favoring arbitration. The Act was designed to overcome the traditional hostility to this form of dispute resolution and to preempt state law prohibiting arbitration with respect to contracts "evidencing a transaction involving commerce."[1] *Id.* § 2; *see also Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 269–71, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).

 Arbitration, of course, is a matter of contract. *Howsam v. Dean Witter Reynolds,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). If there is "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration any controversy," the contract falls within the scope of the FAA. 9 U.S.C. § 2. It is undisputed that the MA here concerns a transaction involving interstate commerce.

 The question of arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. *AT & T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Mitsubishi Motors Corp. v.*

*Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (citations omitted); *see also* 9 U.S.C. §§ 3, 4. The Supreme Court has more recently explained that the question of arbitrability is for the court "where contracting parties would likely have expected a court to have decided the gateway matter." *Howsam,* 537 U.S. at 83, 123 S.Ct. 588. Otherwise, it is matter for the arbitrator. *Id.* Moreover, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT & T Techs.,* 475 U.S. at 649, 106 S.Ct. 1415. As stated by the Supreme Court in *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

 We must apply federal substantive law in passing on whether an issue is subject to arbitration. *Mitsubishi,* 473 U.S. at 626, 105 S.Ct. 3346. Indeed, federal law preempts state law insofar as it prohibits or limits arbitration under a contract encompassed by the FAA. *Allied–Bruce,* 513 U.S. at 280, 115 S.Ct. 834. However, it is state law here which governs matters "concerning the validity, revocability, and enforceability of contracts generally." *Doctor's Assocs. Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (citation omitted).

 We first review the plaintiffs' claims to determine whether they fall with-

---

1. The FAA excludes from its reach "contracts of employment of seamen, railroad workers, or any other class of workers engaged in foreign interstate commerce." *See* 9 U.S.C.

§ 1. This exclusion is not relevant here. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 107, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

in the ambit of the arbitration clause of the MA. The plaintiffs bring survival actions on behalf of the decedents for negligence, strict liability, and breach of express and implied warranties. They also bring wrongful death actions on behalf of certain of decedents' beneficiaries. As noted above, the arbitration clause is broad and encompasses "[a]ny and all claims ... of any nature whatsoever (whether in contract, tort, or otherwise, including statutory ... claims) arising out of, relating to, or in connection with (1) this Agreement, [or] (2) the relationships which result from this Agreement...." Maintenance Agreement, ¶ 12. The term "relates to" has been broadly defined to mean makes "reference to." *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec. Inc.*, 93 F.3d 1171, 1173 (3d Cir.1996).

In their amended complaint, the plaintiffs seek damages for the deaths of Elizabeth Ann Peltz and John Leo Vahey for the failure of Sears promptly to repair their home air-conditioner during extremely hot weather in Philadelphia in the summer of 2002. Their current pleading refers to the MA and states that it was "in full force and effect" at the time of the decedents' death. It even quotes the MA's wording that " '[i]f your health or safety is endangered ... emergency service is available.' " Pls.' Am. Compl. at ¶ 13. Significantly, in each of their various claims for relief plaintiffs specifically incorporate the MA and this language by reference. Indeed, on May 25, 2004, plaintiffs amended their complaint specifically to add these references which were absent from their initial pleading. Plaintiffs rely on the MA to support each and every claim they have brought against Sears for damages. They contend that Sears was aware that a person's health or safety could be adversely affected as a result of a malfunctioning air-conditioner. We find that the plaintiffs' claims, which sound in both tort and contract, relate to the MA or to the relationships which resulted from the MA and are thus covered by the language of its arbitration clause.

■ Before arbitration can be ordered, however, we must determine whether the plaintiffs in their various capacities are subject to the arbitration agreement. An individual cannot be compelled to arbitrate unless " 'he or she is bound by that agreement under traditional principles of contract and agency law.' " *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 194–95 (3d Cir.2001) (citation omitted). This is an issue for the court, and not for an arbitrator, to decide. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

■ It cannot be disputed that Ms. Peltz, as a signatory to the MA, and her estate, are bound to arbitrate. *See id.* The survival action for negligence, strict liability, and breach of warranty, is brought by her Administrator, Joseph Peltz, on behalf of her estate. *See Harvey v. Hassinger*, 315 Pa.Super. 97, 461 A.2d 814, 816 (1983). These claims, which could have been brought by Ms. Peltz herself had she lived, survive her death. *Id.* Mr. Peltz as her Administrator merely stands in her shoes.

■ Mr. Peltz also brings a wrongful death action against Sears on behalf of Ms. Peltz's beneficiaries, who are not signatories to the MA. The decedent could not have brought these claims had she lived. *Baumgart v. Keene Bldg. Prods. Corp.*, 430 Pa.Super. 162, 633 A.2d 1189, 1191 (1993). Rather, they exist for the benefit of certain relatives of the decedent enumerated in the Wrongful Death Act. *Id.;* 42 Pa. Con. Stat. Ann. § 8301. Because Ms. Peltz's relatives are not parties to the

MA, the question arises whether they can be compelled to arbitrate. Our Court of Appeal recognizes five circumstances, based upon common law principles of contract and agency law, under which non-signatories may be bound to an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel. *E.I. DuPont,* 269 F.3d at 195 (citing *Thomson–CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995)).

Under the equitable estoppel theory, a non-signatory to a contract will be compelled to arbitrate if he or she "knowingly exploits the agreement." *Id.* at 200 (citation omitted). The policy behind this rule is to "prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *Id.* One form of exploitation occurs when the non-signatory's claims "implicate" the agreement containing the arbitration clause. *Id.* at 201. Here, Ms. Peltz's beneficiaries admit that their claims "derive from [her] claims." Pls.' Br. in Opp'n to the Def.'s Mot. to Compel Arbitration, ¶ 5. Moreover, even if their wrongful death claims cannot be said to derive from Ms. Peltz's claims, her beneficiaries are nonetheless estopped from avoiding arbitration because their wrongful death claims rely upon the MA. As mentioned above, the plaintiffs incorporate by reference the MA and specific language it contains into all of their claims for relief. We will not treat these references as a nullity.

■ Survival actions for negligence, strict liability and breach of implied and express warranties are also brought on behalf of the estate of decedent John Leo Vahey. Unlike Ms. Peltz, he was not a signatory to the MA. It has been brought to our attention that he may have twice paid for the renewal of the MA with his credit card. Regardless of whether these acts are sufficient to characterize him as a signatory, the Administrator of his estate, Henry Vahey, who stands in his shoes, is also bound to arbitrate these claims under an equitable estoppel theory. We again note that the survival claims rely upon the MA. With respect to all of these claims, the MA and specific language from it have been incorporated by reference.

■ The outcome is the same for John Leo Vahey's beneficiaries with respect to the wrongful death action being brought on their behalf. The Administrator, Henry Vahey, admits that these claims "derive from [John Leo Vahey's] claims." Pls.' Br. in Opp'n to the Def.'s Mot. to Compel Arbitration, ¶ 5. Additionally, their wrongful death cause of action incorporates by reference the MA and specific language it contains. Thus, Henry Vahey, who brings a cause of action for wrongful death on behalf of John Leo Vahey's beneficiaries, must arbitrate these claims because of equitable estoppel.

■ We must also determine the effect of the limitation of liability clause in the MA which reads:

> Limitation of Liability. Except as stated in paragraph 5,[2] neither Sears, nor its Agents, Contractors or Licensees are

---

**2.** Paragraph five provides:

FOOD LOSS REIMBURSEMENT FOR REFRIGERATORS AND FREEZERS. Sears will reimburse you up to $200 in any one year of coverage for any food spoilage that is the result of a mechanical failure of any covered product. The food loss must be verified by

Sears. If the covered product is still under warranty, any reimbursement under this MA is in addition to any reimbursement under the warranty. In no case shall the total reimbursement under the warranty and this MA exceed the value of the food lost.

liable for any incidental or consequential damages, including, but not limited to, property damage, lost time, loss of use of covered product(s) or any other damages resulting from the breakdown or failure of covered product(s) serviced under this MA, delays in servicing or the inability to service any covered product(s).

Maintenance Agreement, ¶ 9.

Plaintiffs argue that this language limiting their damages renders the parties agreement to arbitrate void as against Pennsylvania's public policy. The issue of public policy is a matter to be resolved by the court. *W.R. Grace and Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). Such a policy must be "well defined and dominant" and is to be ascertained by reference to "laws and legal precedent" of the jurisdiction whose substantive law applies. *Id.*

The Pennsylvania Superior Court has decided that a provision which limited damages for personal injury in a consumer agreement arising out of the application of pesticides is unenforceable as against public policy. *Carll v. Terminix International Co.*, 793 A.2d 921, 925 (Pa.Super.2002). We have no doubt that if presented with the issue, the Pennsylvania Supreme Court would rule the same way with respect to the similar type of consumer agreement involved here. *See Covington v. Continental General Tire, Inc.*, 381 F.3d 216, 218 (3d Cir.2004). Accordingly, we will strike the contractual limitation on damages for plaintiffs' claims under the Survival and Wrongful Death Acts as against the public policy of the Commonwealth.

In *Carll,* the court voided the entire arbitration clause. It reasoned that because the damage limitation was found within the arbitration clause itself, it was not severable. Assuming without deciding that the court in *Carll* properly struck the entire arbitration clause, the language limiting damages before us is located in a separate paragraph of the MA, distinct from the arbitration clause. While the MA itself does not contain a severance provision,[3] this limitation on damages can nonetheless be severed and the arbitration clause enforced. *See Spinetti v. Service Corp. Int'l,* 324 F.3d 212 (3d Cir.2003).

In *Spinetti,* our Court of Appeals enforced an arbitration agreement, under Pennsylvania common law contract principles, despite its containing language that violated public policy. *Id.* It found that the portion stricken was not an essential part of the arbitration bargain. *Id.* at 219. The arbitration agreement in *Spinetti* contained a proviso requiring each party to pay its own attorney's fees, regardless of the outcome of the arbitration, in contradiction of (1) Title VII[4] and ADEA[5] which permit an award of attorney's fees and costs to a prevailing party and (2) federal policy of invalidating arbitration agreements when costs could preclude a party from vindicating his or her federal statutory rights in an arbitral forum. *Id.* at 216. The contract in *Spinetti* did not contain any severability provision. However, the court concluded that severance of the offensive clause and enforcement of the remainder was appropriate because "the primary purpose of the arbitration bargain . . . was not to regulate costs or attorney's fees . . . [but] to provide a mechanism to resolve . . . disputes." *Id.* at 219. The

---

**3.** The arbitration clause contains a severance provision, but this pertains only to language deemed unenforceable within the arbitration clause itself.

**4.** 42 U.S.C. § 2000e, *et seq.*

**5.** 29 U.S.C. § 621, *et seq.*

court explained that "it would be contrary to federal policy to undermine an entire arbitration agreement based upon a single potentially unenforceable term." *Id.* at 220.

The damage limitation provision in the MA is not essential to the arbitration agreement. Neither party argues to the contrary. The arbitration clause of the MA will be enforced but without the MA's limitations on damages for personal injury and death.

■■■ We recognize that it may not be the usual situation to have a contact providing for the arbitration of personal injury or death claims. Nonetheless, the United States Supreme Court has upheld arbitration clauses in employment contracts compelling employees to arbitrate discrimination claims, that is, claims "arising under a statute designed to further important social policies" as long as a person "effectively may vindicate" his or her rights in arbitration. *Green Tree Finan. Corp. v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 23, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 299–300, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). It has consistently refused to invalidate an arbitration on the ground that it does not protect the substantive law rights of persons making claims. *Green Tree Finan. Corp.,* 531 U.S. at 89–90, 121 S.Ct. 513. Thus, there is no basis to prevent arbitration of Pennsylvania survival and wrongful death claims when the contract calling for arbitration involves a transaction in interstate commerce, as it does here. Significantly, it is the plaintiffs themselves who are relying on the MA, which contains an arbitration provision, to support their claims against Sears. They cannot embrace some of its provisions and then cast aside the arbitration requirement.

■■■ The final question before us is whether Sears has waived its right to arbitrate under the MA. In *Howsam,* the Supreme Court stated in general language that "the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" 537 U.S. at 84, 123 S.Ct. 588. Nonetheless, in *Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 596–98 (3d Cir.2004), a case subsequent to *Howsam,* our Court of Appeals decided the issue of waiver when plaintiff contended in the context of a pending lawsuit that the defendant had delayed too long in petitioning to compel arbitration. This is the same waiver issue before us.

■■■ Citing Pennsylvania law, the plaintiffs argue that Sears has waived its right to arbitrate because: (1) it did not raise the issue of arbitration in its motions to dismiss; (2) it engaged in discovery; and (3) it filed two pretrial motions which did not raise the issue of arbitration. However, the waiver issue here is a matter of federal law. *See Mitsubishi,* 473 U.S. at 626, 105 S.Ct. 3346; *see also Moses,* 460 U.S. at 24–25, 103 S.Ct. 927. "[A] party waives the right to compel arbitration only in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 232 (3d Cir.1997).

■■■ The fact that Sears did not raise the issue of arbitration in its motions to dismiss is not controlling. A motion to compel arbitration is treated as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). It is not required that all grounds for failure to state a claim be included in a pretrial motion. *See* Fed. R.Civ.P. 12(h)(1) and (2). *Palcko,* 372 F.3d at 597–98. Moreover, there is a "strong

judicial posture favoring arbitration.... [W]aiver of arbitration rights 'is not to be lightly inferred.'" *Id.* at 598. In this regard, we note that Sears preserved its position by pleading arbitration as an affirmative defense in its answer. *See Mautz & Oren, Inc. v. Teamsters, Chauffeurs, and Helpers Union, Local No. 279,* 882 F.2d 1117, 1126 (7th Cir.1989); *but see Reid Burton Constr., Inc. v. Carpenters Dist. Council,* 614 F.2d 698, 702–03 (10th Cir.1980).

Our Court of Appeals has found defendants to have waived their right to compel arbitration in *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 925–27 (3d Cir. 1992). During an eleven month period prior to filing a motion to compel arbitration, the defendants engaged in extensive motion practice, deposed all of the named plaintiffs, opposed the plaintiffs' motion to compel discovery, and then moved to compel arbitration only after the plaintiffs' motion to compel discovery had been granted. *Hoxworth v. Blinder, Robinson, and Co.,* 980 F.2d 912, 925–27 (3d Cir.1992).

We acknowledge that Sears has waited seven months after the filing of the amended complaint to file its motion to compel arbitration. It has filed two motions to dismiss but the first one was directed to the original complaint and was denied as moot after the plaintiffs filed their amended complaint. The other was denied without prejudice. The parties have served answers to each others' interrogatories and requests for the production of documents. Finally, Sears has deposed at least one police officer in this matter. While it may be argued that the seven month delay evidences that the parties have "engaged in an extensive course of litigation," it cannot be said under the circumstances before us that "prejudice to the party resisting arbitration can be shown." *Great Western,* 110 F.3d at 232. It is prejudice that is the "touchstone" on the issue of waiver. *Palcko,* 372 F.3d at 598.

Accordingly, the motion of Sears to compel arbitration will be granted.

### ORDER

AND NOW, this 8th day of March, 2005, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of the plaintiffs to dismiss pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure is DENIED;

(2) the motion of defendant Sears, Roebuck and Company to compel arbitration is GRANTED. The parties are directed to proceed to arbitration forthwith in accordance with the terms of the Sears Maintenance Agreement except that the provision in said Agreement limiting damages is STRICKEN; and

(3) this action is STAYED pending completion of the arbitration.