OPINION
{¶ 1} Defendant-appellant, Columbus Steel Castings Company ("CSC"), appeals from a judgment of the Franklin County Court of Common Pleas denying its motion to dismiss or stay proceedings and compel arbitration of the wrongful death claim of plaintiff-appellee Alice Peters ("Peters"), administrator of the estate of William Peters. For the following reasons, we affirm.
 {¶ 2} CSC hired ELS, Inc. ("ELS"), an employee leasing agency, to manage the recruitment, assignment, and payment of employees for CSC's steel forging plant. On July 9, 2003, ELS hired William Peters and assigned him to work at CSC. At the time of his hiring, William Peters signed a document entitled "ELS, Inc. Dispute Resolution Plan Acknowledgment of Receipt and Agreement to Be Bound" ("Acknowledgment and Agreement"). This document states in part:
In consideration for my employment with the Company as well as the right to used the Dispute Resolution Plan, I agree that hereafter I will be bound by the Company's Dispute Resolution Plan. As a result, I understand and agree that mediation, and, if unsuccessful, arbitration under the Dispute Resolution Plan will be my sole and exclusive remedies for any legal claims or disputes that I may have against the Company regarding my employment or the termination of my employment.
 {¶ 3} Like the Acknowledgment and Agreement, ELS' Dispute Resolution Plan ("the Plan") itself provides that, "[t]he Plan shall be the exclusive, final and binding method by which disputes are resolved." Section 3. The Plan purports to apply to and bind "the Company,[1] all employees * * * and the heirs, beneficiaries, successors, and assigns of any such persons." Section 4(A). Finally, the Plan states that it applies to:
B. [A]ny legal or equitable claim, demand or controversy, in tort, contract, under common law or statute, or otherwise alleging violation of any legal obligation, between persons bound by the Plan, which relates to, arises from, concerns or involves in any way:
1. This Plan;
2. The employment of an employee, including the application for and the terms, conditions, or termination of such employment;
3. Employee benefits or other incidents of employment with the Company * * *; or
4. Any other matter related to the relationship between the employee and the Company including * * * intentional tort * * *.
 {¶ 4} A little over a week after William Peters was hired, he fell from a 50-foot high catwalk as he performed work for CSC. William Peters died as a result of the injuries he sustained from the fall.
 {¶ 5} On December 2, 2003, Peters, William Peters' widow and administrator of his estate, filed suit against CSC, asserting wrongful death and survivorship claims. In this complaint, Peters alleged, in part, that: (1) CSC knew of the danger inherent in requiring its employees to work on a 50-foot high catwalk without providing any safety devices to prevent a fall; (2) CSC knew that harm to its employees was substantially certain to occur; and (3) despite this knowledge, CSC continued to subject its employees to the danger. Given this allegedly knowing conduct, Peters maintained that CSC intentionally caused her husband's death.
 {¶ 6} In response to Peters' complaint, CSC filed a motion styled, "Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, Motion to Compel Arbitration and Stay Proceeding." In its motion, CSC argued that the Plan governed Peters' claims, and it requested that the trial court either dismiss Peters' complaint or grant a stay so that the parties could resolve Peters' claims through arbitration, as the Plan required. Peters replied in her memorandum in opposition that neither she nor any of William Peters' other surviving kin signed an arbitration agreement. Therefore, Peters argued, because the beneficiaries did not agree to submit their wrongful death claim to arbitration, the trial court could not force them to arbitrate that claim.
 {¶ 7} The trial court referred the case to a magistrate, and after a motion hearing, the magistrate found that William Peters' agreement to the Plan did not preclude Peters from pursuing a wrongful death claim in a court of law. Consequently, the magistrate denied CSC's motion to dismiss or stay proceedings and compel arbitration as to that claim. CSC objected to the magistrate's decision, but, in its March 3, 2005 decision and entry, the trial court overruled CSC's objection and adopted the magistrate's decision. After Peters dismissed the survivorship claim, the March 3, 2005 judgment became a final appealable order. CSC now appeals from this judgment.
 {¶ 8} On appeal, CSC assigns the following error:
The Trial Court erred in denying the Motion of Defendant-Appellant Columbus Steel Castings, Inc. to Dismiss for Lack of Jurisdiction, Or, In the Alternative, Motion to Compel Arbitration and Stay Proceedings as to the wrongful death claim asserted by Plaintiff-Appellee, Alice Peters.
 {¶ 9} By its only assignment of error, CSC argues that the Plan requires Peters to arbitrate the wrongful death claim, and thus, the trial court erred in not enforcing the Plan against Peters. We disagree.
 {¶ 10} Before addressing the merits of CSC's argument, we must first determine the appropriate standard for our review of CSC's motion to dismiss or stay proceedings and compel arbitration. Peters argues that this court should apply an abuse of discretion standard of review, while CSC champions the de novo standard. This disagreement between the parties is a reflection of the split in authority regarding this issue. Boggs v.Columbus Steel Castings Co., Franklin App. No. 04AP-1239,2005-Ohio-4783, at ¶ 5 (recognizing the split in authority). Traditionally, when confronted with appeals from motions to dismiss or stay pending arbitration, appellate courts use the abuse of discretion standard. See Pyle v. Wells FargoFinancial, Franklin App. No. 05AP-644, 2005-Ohio-6478, at ¶ 11;Cheney v. Sears, Roebuck and Co., Franklin App. No. 04AP-1354,2005-Ohio-3283, at ¶ 7; Cronin v. California Fitness, Franklin App. No. 04AP-1121, 2005-Ohio-3273, at ¶ 7. However, some Ohio courts, including this court, have held that the de novo standard of review is proper when the appeal presents a question of law. See Von Arras v. Columbus Radiology Corp., Franklin App. No. 04AP-934, 2005-Ohio-2562, at ¶ 8; Dunkleman v. CincinnatiBengals, Inc., 158 Ohio App.3d 604, 2004-Ohio-6425, at ¶ 18-20. We find the reasoning of the latter line of authority persuasive, and thus, because the resolution of this case turns upon a question of law, we will apply the de novo standard of review.
 {¶ 11} Because arbitration is a matter of contract, "`a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Council of SmallerEnterprises v. Gates, McDonald Co. (1998), 80 Ohio St.3d 661,665, quoting AT T Technologies, Inc. v. Communications Workersof Am. (1986), 475 U.S. 643, 106 S.Ct. 1415. Therefore, while there is a strong policy favoring arbitration agreements, ABMFarms, Inc. v. Woods (1998), 81 Ohio St.3d 498, 500, a court has no authority to mandate that a party participate in arbitration if he has not agreed to do so. Indeed, when a party resisting arbitration is not a signatory to an arbitration agreement, a presumption against arbitration arises. Benjamin v. Pipoly,155 Ohio App.3d 171, 2003-Ohio-5666, at ¶ 36. Consequently, before determining whether a particular dispute is "arbitrable" under the agreement, a court must first decide whether any agreement to arbitrate exists between the parties. Id.
 {¶ 12} As arbitration is a matter of agreement, a contract that purports to bind a party to arbitrate, but lacks the party's signature, is generally not a sufficient basis on which to compel arbitration. Consequently, the mere naming of William Peters' "heirs" and "beneficiaries" as "parties" to the Plan, without their agreement, does not require the heirs and beneficiaries to arbitrate.
 {¶ 13} However, nonsignatories can be compelled to arbitrate if they are bound to an arbitration agreement "under ordinary contract and agency principles." Javitch v. First UnionSecurities, Inc. (C.A.6, 2003), 315 F.3d 619, 629. For example, the Supreme Court of Ohio recently held that, pursuant to the equitable estoppel doctrine, a nonsignatory can be bound by an arbitration clause when the nonsignatory seeks a declaratory judgment as to the signatories' rights and obligations under the contract containing the arbitration clause. Gerig v. Kahn,95 Ohio St.3d 478, 2002-Ohio-2581, at ¶ 19. In addition to estoppel, a nonsignatory can be bound to an arbitration agreement via the theories of incorporation by reference, assumption, agency, veil-piercing/alter ego, and third-party beneficiary. Javitch,
supra, at 629, citing Thomson-CSF, S.A. v. Am. ArbitrationAssn. (C.A.2, 1995), 64 F.3d 773, 776; Intergen N.V. v. Grina
(C.A.1, 2003), 344 F.3d 134, 145-150 (considering the theories of equitable estoppel, third-party beneficiary, agency, and alter ego); E.I. DuPont de Nemours Co. v. Rhone Poulenc Fiber Resin Intermediaries, S.A.S. (C.A.3, 2001), 269 F.3d 187, 195 ("Each of appellants' theories for binding DuPont to the arbitration clause, i.e., third party beneficiary, agency/principal, and equitable estoppel, is a recognized principle of contract or agency law applicable in the arbitration context."); Indus. Electronics Corp. v. iPower Distrib. Group,Inc. (C.A.7, 2000), 215 F.3d 677, 680 (construing Ohio law in holding that a third-party beneficiary could be bound by an arbitration provision).
 {¶ 14} Instead of identifying any particular theory upon which William Peters' wrongful death beneficiaries are bound to the Plan, CSC refers this court to what it contends is analogous precedent. Primarily, CSC relies upon Parsley v. TerminixInternatl. Co. (S.D. Ohio, Sept. 15, 1998), No. C-3-97-394, in which the plaintiff brought suit against a pest control company for allegedly poisoning the well that provided water to her and her mother. The plaintiff's claims included claims for the personal injury she sustained as a result of her alleged poisoning, as well as claims for wrongful death and survivorship stemming from the death of her mother. Because the plaintiff's mother had signed a contract with the defendant that included an arbitration clause, the defendant filed a motion to dismiss or stay pending arbitration. In arguing that the arbitration clause did not apply, the plaintiff contended, in part, that her wrongful death and survivorship claims exceeded the scope of the arbitration provision. The court held otherwise, concluding that the broad language of the policy, which stated that the parties agreed to arbitrate "any controversy or claim between them arising out of or relating to this agreement," encompassed the plaintiff's wrongful death and survivorship claims.
 {¶ 15} Based upon the Parsley court's reasoning, CSC argues that the Plan compels arbitration of the instant wrongful death claim because the Plan applies to any "matter related to the relationship between the employee and [CSC]," thus encompassing any claim premised upon William Peters' death while performing his job. This argument, however, confuses the question of what type of claims are "arbitrable" with the question of who is compelled to arbitrate.
 {¶ 16} In Parsley, the court skipped the necessary first step — determining whether the parties agreed to arbitrate — with regard to the plaintiff's wrongful death claim. Without explanation, the court moved on to the next relevant inquiry: whether the scope of the arbitration clause encompassed the wrongful death claim. However, whether certain types of claims are within the scope of the Plan has no bearing upon whether a written agreement to arbitrate exists between CSC and the wrongful death beneficiaries. The existence of an arbitration agreement between the parties and the "arbitrability" of a claim present two separate inquiries, and proof of the former is necessary before a court may consider the latter. Benjamin,
supra, at ¶ 36.
 {¶ 17} Moreover, although some out-of-state cases have addressed whether a plaintiff asserting a wrongful death action is bound by an arbitration agreement signed by the decedent, none are dispositive here. The prevailing reasoning in these factually-similar cases is best expressed in a recent case from the Supreme Court of Alabama, in which that court held:
"We recognize that an administratrix of a decedent's estate stands in the shoes of the decedent. We also recognize that the `[p]owers [of an executor], in collecting the debts constituting the assets of the estate, are just as broad as those of the deceased.' For the same reason the powers of an executor or an administrator encompasses all of those formerly held by the decedent, those powers must likewise be restricted in the same manner and to the same extent as the powers of the decedent would have been. Thus, where an executor or administrator asserts a claim on behalf of the estate, he or she must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent."
Briarcliff Nursing Home, Inc. v. Turcotte (Ala. 2004),894 So.2d 661, 665, quoting SouthTrust Bank v. Ford, 835 So.2d 990,993 (Ala. 2002), at 993-994 (citations omitted). Likewise, inWilkerson v. Nelson (M.D.N.C. 2005), 395 F.Supp.2d 281,288-289, the court held that because an estate's potential for recovery is legally derivative of the decedent's own ability to recover, the decedent's execution of an arbitration agreement bound the estate. See, also, Peltz v. Sears, Roebuck Co.
(E.D.Pa. 2005), 367 F.Supp.2d 711, 718-719 (decedent's beneficiaries, although nonsignatories to the contract containing the arbitration clause, were bound to arbitrate because their wrongful death claims derived from the decedent's claims).[2]
 {¶ 18} This court, however, cannot apply the holdings ofTurcotte, Wilkerson, or Peltz to the instant case because all these cases turn upon the derivative nature of the wrongful death claim. Pursuant to Ohio jurisprudence, "a wrongful death action is an independent cause of action." Thompson v. Wing
(1994), 70 Ohio St.3d 176, 183 (emphasis added). Although R.C.2125.02(A)(1) requires a wrongful death claim to be brought in the name of the decedent's personal representative, that representative pursues an independent claim on behalf of the decedent's next of kin, not a claim on behalf of the estate itself. Thompson, supra, 179 ("[A] wrongful death claim [is] enforced by the decedent's personal representative on behalf of the decedent's beneficiaries."). Further, "the wrongful death action does not even arise until the death of the injured person." Id. at 183. Thus, because a wrongful death claim is independent from any claim the decedent could have pursued if he had lived, the representative's ability to recover against the tortfeasor is not affected by any limitations on the decedent's ability to recover against the tortfeasor. Accordingly, under Ohio law, wrongful death beneficiaries, who are not otherwise bound to an arbitration agreement, are not required to arbitrate simply because the decedent agreed to do so.
 {¶ 19} CSC, however, argues that Thompson merely held that a decedent cannot release another's wrongful death claim, and thus, Thompson is inapplicable to the instant case. We disagree. In Thompson, the Supreme Court of Ohio unequivocally held that wrongful death claims are independent claims. Id. at 183. Although the Thompson court applied this rule to preclude a decedent's release of a wrongful death claim, the Supreme Court of Ohio did not limit the rule of law to this application. Further, the only reason CSC offers for not following this rule of law is the strong presumption in favor of arbitration. This reason is insufficient to overcome a rule of law.
 {¶ 20} CSC next argues that this court should follow analogous insurance case law, wherein Ohio courts required litigants to arbitrate their wrongful death claims, regardless of those claims' independent nature. CSC, however, misconstrues the case law it cites. In each of the cited cases, the courts compelled arbitration because the litigants were either the policyholders, i.e., signatories, or third-party beneficiaries to an insurance policy containing an arbitration clause. Here, CSC acknowledges that Peters and the next of kin she represents are not signatories to the Plan, but, in oral argument, CSC argued for the first time that Peters and the next of kin are third-party beneficiaries.
 {¶ 21} "`A third-party beneficiary is one for whose benefit a promise is made, but who is not a party to the contract encompassing the promise.'" State v. Fed. Ins. Co., Franklin App. No. 04AP-1350, 2005-Ohio-6807, at ¶ 17, quoting Berge v.Columbus Community Cable Access (1999), 136 Ohio App.3d 281,303. CSC argues that Peters and the next of kin are third-party beneficiaries because CSC promised William Peters' heirs and beneficiaries the right to arbitrate certain claims they might have against CSC. However, we need not decide whether this "benefit" is sufficient to make Peters and the next of kin third-party beneficiaries.
 {¶ 22} "[A] third party beneficiary will only be bound by the terms of the underlying contract where the claims asserted by that beneficiary arise from its third party beneficiary status."E.I. DuPont de Nemours Co., supra, at 197. See, also, Indus.Electronics Corp., supra, at 680; Jankovsky v. Grana-Morris
(Sept. 7, 2001), Miami App. No. 2000-CA-62 ("[m]ere status as a beneficiary does not bind a party to perform contractual duties. Instead, the obligation [to arbitrate] arises where a beneficiary seeks to enforce the contract."); cf. Sarmiento v. Grange Mut.Cas. Co., 106 Ohio St.3d 403, 2005-Ohio-5410, at ¶ 30 ("[O]ne who seeks the benefits of a contract * * * must also assume its burdens."). Thus, in Zotter v. United Services Auto. Assn.
(Nov. 10, 1994), Portage App. No. 94-P-0001, one of the cases CSC cites, the court held that "covered persons" under an insurance policy could compel arbitration when they sought uninsured motorists benefits to which they were entitled due to their third-party beneficiary status. Because the Zotter plaintiffs sought to enforce the contract under which they had third-party beneficiary status, they were bound to the contract's provisions, including the arbitration clause. Here, unlike in Zotter, the instant wrongful discharge claim does not arise out of any third-party beneficiary status Peters and the next of kin might have under the Plan. Rather, it arises from the injury they suffered because of William Peters' death. Therefore, Peters and the next of kin cannot be compelled to arbitrate their wrongful death claim.
 {¶ 23} Because CSC presents this court with no basis on which to bind the wrongful death beneficiaries to the Plan, we conclude that the trial court properly denied CSC's motion to compel arbitration. Accordingly, we overrule CSC's assignment of error.
 {¶ 24} For the foregoing reasons, we overrule CSC's only assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] Although the Plan defines "Company" to mean ELS, and not CSC, the issue of whether CSC may enforce the Plan is not currently before this court and we do not address it.
[2] Given the Parsley court's differing treatment of the plaintiff's "representative" claims, which included her wrongful death claim, and her "individual claims," we suspect that the court presumed that the plaintiff's wrongful death claim was a derivative claim. Unlike the court's analysis of the plaintiff's "representative" claims (described above), when the court addressed the plaintiff's individual claims, it first considered whether the plaintiff agreed to arbitrate those claims. Omitting this first step with regard to the "representative" claims is logical if the court presumed that when the plaintiff was asserting claims derived from her mother's claims, she was bound by her mother's agreement to arbitrate.